**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Smith, | ) | No. CV06-0790--PHX-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America; et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before this Court is Plaintiff's Federal Rules of Civil Procedure Rule 60(b)(1) and (6) Motion for Relief from Judgment (Doc. #84).   The Court now rules on the Motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

When this case was originally filed, each Defendant moved to dismiss. Plaintiff's counsel did not respond to those motions. In an order dated September 11, 2006, the Court advised Plaintiff's counsel that it deemed the failure to respond to motions to dismiss a failure to prosecute the case, which would subject the case to automatic dismissal. The Court then *sua sponte* granted Plaintiff additional time to respond. Plaintiff did not timely respond, but instead sought an extension of time. Plaintiff ultimately responded to the motions and sought to amend the Complaint. The Court allowed Plaintiff to amend the Complaint, which resulted in the filing of four additional motions to dismiss by the Defendants dated December 21, 2006, December 21, 2006, December 26, 2006, and January 5, 2007. Plaintiff's counsel again did not timely respond to the motions to dismiss. The Court, in an order dated

February 13, 2007, over a week after the last response was due, granted all four Defendants' motions to dismiss and entered a judgment of dismissal without prejudice as to all parties. (Doc. #81).

On March 5, 2007, Plaintiff's counsel filed the currently pending Rule 60(b)(1) and (6) Motion for Relief from Judgment, claiming that a "highly personal situation arising out of professional issues between [Plaintiff's counsel] and a now-former client in a completely unrelated matter" completely "undermined [Plaintiff's counsel's] ability to complete the work responsibly needed to reply to the motions filed by" Defendants. (Doc. #84 at 3,7).  More specifically, Plaintiff's counsel claims that "starting in January, but escalating in early February," two e-mails from the former client with attachments of "gargantuan" size, a "screaming tirade hand-written multi-page fax," and "other harassments" either made his neglect excusable under Rule 60(b)(1), or rose to the level of extraordinary circumstances required for an equitable remedy under Rule 60(b)(6).  (Doc. #84 at 4, Exhibit 1; Doc. #89 at 4).  Plaintiff's counsel therefore asks the Court to set aside its order granting Defendants' motions to dismiss.

**II.     DISCUSSION**

   **A.     Rule 60(b)(1)**

Rule 60(b)(1) allows a court to relieve a party or a party's legal representative from a final judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001).  The Court applies the "good cause" standard that governs vacating an entry of default under Rule 55(c) when ruling on a motion to vacate a default judgment under Rule 60(b). *Id.* at 696.  Specifically, the Court examines: (1) whether the defaulting party acted with "excusable neglect";[1] (2)

---

[1] The *TCI* court held, "A showing of lack of culpability sufficient to meet the Rule 55(c) good cause standard is ordinarily sufficient to demonstrate as well the excusable neglect or mistake criteria under Rule 60(b)(1), and there is therefore no reason to require that those 60(b)(1) criteria be established separately." 244 F.3d at 698 (internal quotations omitted).

- 2 -

1 whether the plaintiff has a meritorious case;[2] and (3) whether reopening the default judgment would prejudice the non-defaulting party. *See id.*

### 1.   Excusable Neglect

"Excusable neglect" covers negligence on the part of counsel. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). The determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-24 (9th 2000). These factors are not exclusive, but "provide a framework with which to determine whether missing a filing deadline constitutes 'excusable' neglect." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI*, 244 F.3d at 701. Rather, courts must determine whether setting aside the judgment would hinder the defendant's ability to pursue his defense. *See id*. Although setting aside the default judgment in this case would force Defendants to proceed on the merits, it would not result in the sort of prejudice required. Nor did Plaintiff unduly delay in filing the motion to set aside the default judgment. The Clerk entered judgment for the Defendants (Doc. #82) on February 14, 2007. Plaintiff filed the pending motion (Doc. #84) on March 5, 2007.

The real problems here are the reasons given for the failure to respond to the motions to dismiss and Plaintiff's counsel's history of failing to meet filing deadlines. Plaintiff's counsel's avowed reason for failing to respond to the Defendants' motions for dismissal was a "highly personal situation arising out of professional issues between [Plaintiff's counsel] and a now-former client in a completely unrelated matter," "starting in January, but

---

[2]In *TCI*, the Court entered default judgment against the defendant, so the Court examined whether the defendant had a meritorious defense. 244 F.3d at 700-01.

- 3 -

1 escalating in early February." (Doc. #84 at 3, Exhibit 1). More specifically, Plaintiff's
2 counsel claims that two e-mails from a former client with attachments of "gargantuan" size,
3 a "screaming tirade hand-written multi-page fax," and "other harassments" prevented him
4 from completing the "work responsibly needed to reply to the motions filed by" Defendants.
5 (Doc. #84 at 4, 7; Doc. #89 at 4).

6 While the Court sympathizes with Plaintiff's counsel, it does not believe that the
7 situation excuses counsel's failure to timely file responses to Defendants' motions to dismiss
8 (for a second time)[3] or to at least request an extension of time. Plaintiff's counsel managed
9 to file complaints on his own behalf with local and federal law enforcement and obtain an
10 injunction during the month of January (Doc. #84 at 3), but apparently was unable to file a
11 response, request an extension, or even place a phone call to the Court or opposing counsel
12 to alert them to the situation in this case.

13 The Court does not find convincing the reasons given by Plaintiff's counsel for his
14 failure to respond. The Court fails to see how two e-mails with large attachments and a
15 "screaming tirade hand-written multi-page fax" prevented counsel from filing a response or
16 a motion to extend the deadline. The Court understands that these occurrences were
17 inconvenient. The Court also acknowledges that being forced from one's office by a
18 disturbed former client could impede Plaintiff's counsel's work. But counsel did not have to
19 leave his office until late February - almost a month after the responses were due. (Doc.
20 #84., Exhibit 1).

21 As noted earlier in the Order, this is not the first time Plaintiff failed to respond to
22 Defendants' motions to dismiss. After the previous failure to file, the Court *sua sponte*
23 granted Plaintiff additional time to respond and warned counsel that the failure to respond
24 to motions to dismiss constitutes a failure to prosecute the case. Apparently, counsel did not
25 heed that warning. Although a close case, on balance, the Court finds that Plaintiff's

---

28 [3]The Court notes that the second round of Defendants' motions to dismiss is essentially the same as the first round of motions.

1 counsel's neglect was not excusable.

2 **2.     Merits of the Case**

3 More important than the reason for the failure to respond to the motions to dismiss is
4 the ultimate futility of filing a response. In deciding whether to set aside a default judgment,
5 the Court must determine whether some possibility exists that the outcome of the suit after
6 a full trial would differ from the result achieved by the default. *Hawaii Carpenters' Trust*
7 *Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (internal citations omitted). The Court
8 finds that no such possibility exists.

9 Plaintiff's Prayer for Relief reads:

> **WHEREFORE**, Plaintiff-Petitioner seeks an Order from the Court, against Defendants-Respondents, and each and all of them, as follows:
> A.   That Plaintiff-Petitioner's record in the L.A. County Sheriff's office from 45 years ago be corrected to match the statement from the office of the Governor of California in its 1979 letter in re Plaintiff-Petitioner;
> B.   That the FBI be required to correct its record in its NCICS in re the same;
> C.   That the State of Arizona, all subdivisions thereunder, and all private parties in the State who look to the laws, rules, regulations and official records of the State of Arizona be ordered to permit its domiciled citizen of Arizona to exercise the same rights he had under the laws of the State of California and stop blocking the same;
> D.   For leave to amend this Complaint should the same become necessary; AND,
> E.   For such other/further relief as the Court may deem just and proper.

(Doc. #67 at 14-15).

On March 7, 1961, police in Los Angeles County arrested Plaintiff on charges of suspicion of assault with intent to commit murder and suspicion of burglary. (Doc. #67 at ¶8). Ultimately, Plaintiff pled guilty to assault with a deadly weapon in the Superior Court of California on July 6, 1961. (Doc. #33 at 5). On April 25, 1979, the Governor of California officially granted a pardon to Plaintiff for that state felony conviction. (Id.) In October of 1972, Patti Jo McKay, the Deputy Legal Affairs Secretary for the California Governor's Office at that time, wrote a letter to Plaintiff's former attorney saying she found no evidence that Plaintiff used a dangerous weapon during his crime. (Letter Ex. to Doc.

- 5 -

#67).

All of Plaintiff's requests for relief depend on this Court's ability, based on a letter written by someone in the Governor's office in 1979, to amend or overturn a 1961 guilty plea entered in a California state court. The Court simply does not have the authority to grant any of the relief requested. Granting the motion to set aside the default judgment therefore would just prolong the inevitable.

### B.     Rule 60(b)(6)

Rule 60(b)(6) of the Federal Rules of Civil Procedure allows a court to relieve a party or a party's legal representative from a final judgment on the basis of "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice . . . such relief is available only where extraordinary circumstances prevented a litigant from seeking earlier, more timely relief." *United States v. Alpine Land & Reservoir, Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Under Rule 60(b)(6), "relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *Id.* Although timeliness depends on the facts of each case, relief may not be had where "the party seeking reconsideration has ignored normal legal recourses." *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 250 (9th Cir 1989).

Here, Plaintiff's counsel failed to demonstrate that "extraordinary circumstances" prevented him from seeking earlier, more timely relief. The Court does not believe the circumstances described by Plaintiff's counsel rise to the level of excusing his neglect under Rule 60(b)(1), much less to the level required for "extraordinary circumstances" under Rule 60(b)(6).

Additionally, Plaintiff's counsel ignored normal legal recourses. Prior to the March 1, 2007 e-mail to opposing counsel, almost a month after the last response was due, Plaintiff had made no contact with the Court or any of the Defendants to explain the situation. Plaintiff also never asked for an extension of time to file a response to the motions to dismiss. Plaintiff's counsel could have used normal legal recourses to minimize or rectify the

situation.

Accordingly,

**IT IS ORDERED** denying Plaintiff's Motion for Relief from Judgment (Doc. #84).

**IT IS FURTHER ORDERED** that all pending motions (Doc. #90) are denied as moot.

DATED this 26th day of April, 2007.

James A. Teilborg
United States District Judge

- 7 -